UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH ANTHONY MARTIN                    CIVIL ACTION

VERSUS                                   NO. 08-1197

RODNEY J. STRAIN, JR.                    MAGISTRATE JUDGE
ET AL.                                   JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTION

Oral argument was conducted on May 6, 2009 concerning defendants' motion for summary judgment. Record Doc. No. 39. Participating were Jane L. Johnson of the Tulane Law School Civil Litigation Clinic and two student attorneys, Eric Raymond and Molly Sullivan, representing plaintiff; and Bradley Lewis, representing defendants.

Plaintiff, Joseph Anthony Martin, is a prisoner currently incarcerated in the Louisiana State Penitentiary at Angola, Louisiana. He originally filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 and Louisiana state law against St. Tammany Parish Sheriff Rodney J. Strain, St. Tammany Parish Jail Warden Michael Core and Deputy Warden Gregory Longino. Complaint, Record Doc. No. 1.

After counsel was appointed to represent him, Record Doc. No. 27, plaintiff received leave to file an amended complaint. Record Doc. Nos. 29, 31, 32. In his amended complaint, Martin alleges that defendants violated his constitutional rights by

failing to protect him from an attack by another inmate on October 17, 2007, when he was incarcerated at the St. Tammany Parish Jail. He also brings claims under Louisiana state law that defendants negligently failed to protect him from the attack and are vicariously liable for the negligence of their employees. At oral argument and in his memorandum in opposition to defendants' motion for summary judgment, counsel for Martin stated that plaintiff is <u>not</u> bringing a claim for improper classification.

This matter was referred to the undersigned magistrate judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon the written consent of all parties. Record Doc. No. 34.

Defendants moved for summary judgment on plaintiff's constitutional failure to protect claim. The motion does not mention plaintiff's negligence and vicarious liability claims. Record Doc. No. 39.

Defendants attached to their motion defendant Longino's affidavit and three police reports of the Sheriff's investigation of the incident in which Martin was attacked. The police reports are <u>not</u> verified as required by Fed. R. Civ. P. 56(e)(1). Even if the reports were verified, police reports are admissible only as to the fact findings therein that are based on the knowledge or observations of the investigating officer. To the extent that defendants proffer the police reports to prove the truth of the hearsay statements of the inmate and deputy witnesses to the incident, which are contained in the reports, they are

not admissible.  Fed. R. Evid. 803(8); <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260, 1278 (11th Cir. 2009); <u>Parsons v. Honeywell, Inc.</u>, 929 F.2d 901, 907 (2d Cir. 1991).

Martin filed a timely memorandum in opposition to defendants' motion.  Plaintiff attached two <u>unsigned</u> declarations under penalty of perjury, his own and that of another inmate, Francis Reed, who was incarcerated on the same tier at the time of the incident; the complete transcript of Longino's deposition; and defendants' answers to interrogatories.  Plaintiff's other exhibits consist entirely of St. Tammany Parish Jail materials that are <u>not</u> verified as required by Fed. R. Civ. P. 56(e)(1), with the exception of a few documents that were attached as exhibits to Longino's deposition.  Nonetheless, defendants' counsel stated at oral argument that defendants had provided all of these exhibits to plaintiff during discovery.  Thus, there appears to be no objection to the authenticity of plaintiff's exhibits.

After oral argument on defendants' summary judgment motion, the court, with the consent of counsel for all parties, mailed copies of their unsigned declarations to plaintiff and inmate Reed, along with a letter from plaintiff's counsel directing that the inmates sign the declarations and return them directly to the court in the enclosed self-addressed, stamped envelopes, no later than May 22, 2009.  Record Doc. No. 54.  Martin signed his declaration and returned it to the court within the deadline, and it was filed in the record.

Record Doc. No. 55. Reed signed his declaration and returned it to plaintiff's counsel, who filed it in the record within the deadline. Record Doc. No. 56.

Having considered the complaint, the record, the oral argument and submissions of the parties, and the applicable law, and for the following reasons, **IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED**.

## I.    THE UNDISPUTED FACTS

The following material facts are undisputed, solely for purposes of the pending motion for summary judgment.

Plaintiff was arrested and entered the St. Tammany Parish Jail in September 2006. Record Doc. No. 2, Complaint at p. 3; Record Doc. No. 46-3, Plaintiff's Exh. A, deposition of Gregory Longino at pp. 24-25. Because he was awaiting trial on a murder charge, he was housed on the maximum security tier at the St. Tammany Parish Jail. Record Doc. No. 39-8, affidavit of Gregory Longino, at ¶ 4. Francis Reed was housed on the same tier. Record Doc. No. 56, declaration of Francis Reed, at ¶ 1.

On October 17, 2007, Martin "passed by" the cell shared by inmates Virgil Smith and Anthony Ruppel "to see if anyone there wanted to play cards." Record Doc. No. 55, declaration of Joseph Martin, at ¶ 8. Martin overheard Smith talking to Charlie Brown, who was Smith's cousin or nephew. Smith was telling Brown to steal Ruppel's commissary items, which had just been delivered. Martin told Brown "to stay out of

-4-

Smith's plan to steal the commissary [items] from Ruppel because it looked to me like it was two against one. Brown left Smith's cell," and Martin walked away from the cell into the day room. <u>Id.</u> at ¶ 9. Martin did not approach or speak to Smith. <u>Id.</u> at ¶ 10.

There was an altercation between Smith and Ruppell in their cell. Smith then left the cell. Record Doc. No. 56, Reed declaration at ¶ 10. A few minutes after Martin walked away from Smith's cell, Martin heard "Smith say something like, 'Ya'll take care of this, I'll take care of this.'" Smith punched Martin in the face, pushed him down on a table and held him while Brown hit him. Record Doc. No. 55, Martin declaration at ¶¶ 11, 12. Smith then dragged Martin into an area of the day room below the observation pod, which "is a blind spot not visible to the guards sitting in the pod and not picked up by the security cameras." <u>Id.</u> at ¶ 13. Smith held Martin down and choked him until deputies arrived and sprayed both inmates with Mace to separate them. As Martin got up from the floor, Smith kicked him in the face. <u>Id.</u> at ¶ 14. Ruppel was beaten at the same time, although Martin could not say exactly who beat Ruppel because Martin was trying to defend himself. <u>Id.</u> at ¶ 16.

Martin received multiple injuries, including a broken nose, torn shoulder ligaments, cuts and scrapes around his left eye, and a bite on his right ring finger. He had eight stitches above his eye and needed surgery to reconstruct his nose. <u>Id.</u> at ¶ 17.

According to his own affidavit, Martin was "encouraged" by Lieutenant Georgiana Bennett and Transportation Officer Davenport to cooperate with the Sheriff's detectives who investigated the incident, and he did so. Officer Davenport told Martin that "he was tired of seeing so many people attacked by the same inmate." Lt. Bennett told him that he "was lucky compared to what Smith had done to other inmates in the past." Smith and Brown were criminally charged and convicted of second degree battery and robbery. Id. at ¶¶ 18-23.

Smith was previously incarcerated at the St. Tammany Parish Jail from April 10, 2001 until August 30, 2004, when he was convicted and was transferred out of the St. Tammany Parish Jail to the Department of Corrections. Record Doc. No. 46-3, Plaintiff's Exh. A, Longino deposition at pp. 95, 101-02; Record Doc. No. 46-23, Plaintiff's Exh. S, at p. 4. Smith returned to the St. Tammany Parish Jail to await trial on other charges on August 21, 2007. He was initially housed in insolation, and was moved to Cell A106 in the maximum security tier on September 5, 2007, six weeks before the October 17, 2007 attack on Martin. Record Doc. No. 46-23, Plaintiff's Exh. S; Record Doc. No. 46-3, Plaintiff's Exh. A, Longino deposition at pp. 98-99.

Martin and Reed assert in their declarations that, one week before Smith attacked Martin, Smith and another inmate, Eddie Duckworth, stole commissary items from another inmate, Hale (a.k.a. "Li'l Gangsta"), and beat Hale inside Smith's cell. The

declarations of Martin and Reed do <u>not</u> state that they actually witnessed the attack on Hale, but plaintiff's counsel stated during oral argument that Martin and Reed did not see the attack, but only heard it while it was occurring. Martin and Reed state that Hale was injured in the attack, was taken to the infirmary and was afterwards transferred out of the tier. Record Doc. No. 56, Reed declaration at ¶¶ 2 through 7; Record Doc. No. 55, Martin declaration at ¶ 7. Martin also states that Smith denied involvement in the attack on Hale and that jail personnel could not confirm that Smith was involved. <u>Id.</u>

Defendants did not receive any complaint about Smith as a result of the incident with Hale. Record Doc. No. 46-3, Plaintiff's Exh. A, Longino deposition at p. 130. The tier log book for October 10, 2007 shows that a fight occurred in Cell A106, which was Smith's cell, but only Duckworth, Hale and another inmate named Jones were escorted off the tier in relation to the fight. Record Doc. No. 46-24, Plaintiff's Exh. T, at p. 2. When the guards became aware of the fight, they put the tier on lockdown. <u>Id.</u>; Record Doc. No. 56, Reed declaration at ¶ 4. After this incident, Smith remained on the tier in the same cell. Martin declaration at ¶ 7; Record Doc. No. 56, Reed declaration at ¶ 7.

Martin never complained to any prison official about Smith being a threat to his safety before the October 17, 2007 attack. After Smith was transferred to the maximum security tier in September 2007 and before the attack on Martin, no one complained to jail officials about Smith being a danger to the safety of other inmates. Record Doc. No.

46-3, Plaintiff's Exh. A, Longino deposition at pp. 68-69, 73-74, 129-30. No defendant was personally involved in the October 17, 2007 incident between Smith and Martin.

Longino knew that Smith had a history of violence toward other inmates and deputies and had been disciplined for his actions during Smith's prior incarceration in the St. Tammany Parish Jail, between April 5, 2002 and April 8, 2004, three to five years before Martin was attacked. Record Doc. No. 46-3, Plaintiff's Exh. A, Longino deposition at pp. 110-11; Plaintiff's Exh. B, chronological list of disciplinary reports concerning Smith; Plaintiff's Exhs. C through P, records of Smith's disciplinary actions between April 5, 2002 and April 8, 2004.

Jail officials considered all inmates on the maximum security tier, including both Smith and Martin, to be violent or potentially violent, which undoubtedly was the reason they were housed there. Record Doc. No. 46-3, Plaintiff's Exh. A, Longino deposition at pp. 43, 112-13, 130, 133.

Martin asserts, and Reed avers that other inmates on the tier knew, that the tier contained some "blind spots," including the interior of Smith's cell and the part of the day room directly underneath the observation pod. Defendants knew that the deputies in the pod could not see, and the video cameras in the tier could not monitor, those areas. Record Doc. No. 46-3, Plaintiff's Exh. A, Longino deposition at pp. 103-05, 107-08, 113.

## II.   THE ARGUMENTS OF THE PARTIES

### A.   Defendants' Arguments

Defendants proffer two reasons that summary judgment should be granted on plaintiff's constitutional failure to protect claim.  First, they contend that respondeat superior does not apply to Section 1983 claims and that Martin has not shown that any defendant was personally involved in the incident.  Second, defendants argue that they are entitled to qualified immunity because Martin never told any jail personnel that he was afraid of Smith and because Martin's intervention in the theft of Ruppel's property caused Smith to attack him suddenly and unexpectedly.  Thus, they assert, Martin cannot prove that any defendant was deliberately indifferent to a known, substantial risk of serious harm.

### B.   Plaintiff's Arguments

Citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 848-49 (1994), Martin argues that his failure to notify any jail official that Smith posed a specific risk to him is not an essential element of proving his claim.  He contends that defendants knew or should have drawn the inference from Smith's distant past record of violent behavior from April 2002 through April 2004 during his previous incarceration that Smith posed a substantial risk of harm to other inmates and that defendants failed to abate the risk before Smith attacked Martin.

Plaintiff also argues that each defendant had sufficient personal involvement in the incident to subject each of them to liability for failure to protect him from injury. Martin contends that the proper issue is not defendants' "involvement" in the event, but their "knowledge" of a substantial risk of serious harm and their failure to act despite such knowledge. Thus, Martin asserts that defendants have not met their initial burden to show the absence of evidence upon which he could prevail at trial.

Martin next argues that material fact issues are in dispute. He contends that both the objective and subjective tests of deliberate indifference to a substantial risk of serious harm are met because Smith had a history of attacking other inmates, defendants actually knew of that history and risk, and they failed to keep Smith segregated from other prisoners. Martin further asserts that defendants knew that the tier had blind spots, where the attack on him occurred, which the pod deputy on duty and the surveillance cameras could not see.

As to qualified immunity, Martin states that his constitutional right to be safe from attack by another inmate was clearly established. He argues that defendants' conduct was not objectively reasonable and that they did not respond reasonably to the known substantial risk that Smith was prone to violence against other inmates and was housed in a cell where no deputy could see him. Plaintiff further argues that Smith should not have been housed on a tier and in a cell where he could not be observed, given the

obvious risk that he would be violent against other inmates, and that defendants failed to abate the risk by supervising Smith more closely or moving him to a different tier.

III.    ANALYSIS

    A.    Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000) (citing Anderson, 477 U.S. at 248; National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord Capitol Indem. Corp., 452 F.3d at 430.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or

tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, No. 07-30290, 2009 WL 376837, at *2 (5th Cir. Feb. 17, 2009).

B.  Plaintiff Cannot Prove an Unconstitutional Failure to Protect Him from Harm by Another Inmate

Martin was a pretrial detainee at the time of the incident on which he bases his failure to protect claim.  In Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), however, the Fifth Circuit held "that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement."  Id. at 650.  Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate, such as those alleged by Martin in this case.  Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare, 74 F.3d at 650.  Here, although plaintiff alleges that he was exposed to harm by prison officials' acts or omissions, he fails to produce evidence sufficient to establish the existence of any genuine issue as to any material fact for a claim cognizable under Section 1983.

Under the Eighth Amendment, prison officials have a duty to protect inmates from violence by other inmates and to take reasonable measures to protect their safety. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-33 (1994); <u>Hare</u>, 74 F.3d at 650. The Eighth Amendment standard enunciated in <u>Farmer</u> applies to a prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates. Thus, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. <u>Farmer</u>, 511 U.S. at 834; <u>Newton v. Black</u>, 133 F.3d 301, 308 (5th Cir. 1998).

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitute conduct proscribed by the Eighth Amendment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-06 (1976); <u>accord</u> <u>Gregg v. Georgia</u>, 428 U.S. 153, 182-83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Farmer</u>, 511 U.S. at 847.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." <u>Id.</u> at 834 (quotation omitted).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind.  Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837; accord Newton, 133 F.3d at 308.  "Mere negligence or a failure to act reasonably is not enough.  The officer must have the subjective intent to cause harm."  Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).  If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . .  The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (additional citations and footnote omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In this case, no issue of material fact is in dispute because prison officials had no reason to believe or even suspect that Smith, the inmate who attacked plaintiff, posed a danger to Martin under these particular circumstances. The undisputed facts show that there was no history known to defendants of prior incidents between Martin and Smith or between Smith and any other inmate during Smith's 2007 incarceration at the jail. Martin approached Smith's cell to see whether anyone there wanted to play cards with him. Martin felt no compunction about telling Brown to stay out of Smith's plan to steal commissary items. Thus, it is apparent that Martin himself did not fear harm from Smith. Smith's attack on Martin occurred suddenly and without warning. Because no inmate, including Martin, had complained that Smith was a danger, jail officials had no reason to suspect that Smith posed any threat to Martin before the attack occurred.

Smith's distant past (three to five years earlier) history of violence against other inmates and deputies during his previous incarceration at the St. Tammany Parish jail is too attenuated and remote in time to create any issue of disputed fact that defendants were deliberately indifferent to a substantial risk of serious harm to Martin in October 2007. Longino testified that Smith's record from his prior incarceration at the jail was irrelevant to the decision about where to house him, that Smith was released from isolation and placed into the maximum security tier of the jail's general population because the jail had no reason to keep him in isolation, that he had caused no problems

while he was in isolation when he was initially booked into the jail, and that he was placed in the maximum security tier because, like Martin, he was considered a maximum security inmate.  Record Doc. No. 46-3, Longino deposition at pp. 98-99, 101.

As additional evidence that defendants knew of Smith's propensity for violence against other inmates, plaintiff points to an incident one week before Smith attacked him, when Smith and Duckworth allegedly attacked Hale.  However, there is no evidence in the record that any Sheriff's deputy knew or suspected that Smith was involved in that attack.  Neither Martin nor Reed states that he personally saw Smith attack Hale.  Even if Martin or Reed did see that fight, neither of them told the guards that Smith was involved, and there is no evidence that any guard saw Smith fighting with Hale.  Jail officials had no record of Smith being involved in this incident.

Furthermore, there is no evidence whatsoever that any defendant actually drew the inference either from Smith's record of previous incarceration at the Jail or from the Hale fight that Smith would attack Martin without warning.

Under these circumstances, there is no genuine issue of material fact that any act or omission of prison officials knowingly exposed Martin to a substantial risk of serious harm.  See, e.g., Carrothers v. Kelly, No. 07-60883, 2009 WL 464445, at *1 (5th Cir. Feb. 23, 2009) (citing Farmer, 511 U.S. at 837; Warfield v. Byron, 436 F.3d 551, 557 (5th Cir. 2006)) (Prison officials were not deliberately indifferent when plaintiff admitted

he had not anticipated attack by other inmate, never had problems with his attacker and had played cards and checkers with his attacker without incident.); Eubanks v. Jordan, No. 08-30365, 2008 WL 5068656, at *1 (5th Cir. Nov. 26, 2008) (citing Hare, 74 F.3d at 649-50 & n.4; Scott v. Moore, 114 F.3d 51, 53-54 (5th Cir. 1997)) (Plaintiff failed to raise a genuine issue of material fact that defendants were actually aware of a substantial risk to his safety when he admitted that he had never expressed any concerns regarding his personal safety to jail officials, and no evidence suggested that any other attacks had occurred in the jail.); Smith v. City of Tupelo, 281 Fed. Appx. 279, 2008 WL 2331311, at *3 (5th Cir. 2008) (citing Johnson v. Johnson, 385 F.3d 503, 524 (5th Cir. 2004)) (Plaintiff presented no evidence that he complained to prison officials about threats to his safety, admitted that there were no prior fights and failed to bring forth any evidence to show that conditions were so perilous that defendants' knowledge of the risk should be inferred. "Therefore, as the district court properly concluded, the assault appears to have been an isolated incident . . . .")

Accordingly, in the absence of any proof of deliberate indifference to a substantial risk of serious harm, defendants are entitled to summary judgment in their favor as a matter of law on plaintiff's claim of unconstitutional failure to protect him.

C.    Defendants Were Not Personally Involved in the Incident

"There is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996).  Thus, neither Sheriff Strain, Warden Core nor Deputy Warden Longino can be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in the defendants' employ.  Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold any defendant liable, plaintiff must establish either that the defendant "was personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the defendant] . . . and the alleged constitutional violation."  Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981).  Because Martin has established neither, no defendant can be held liable for failing to protect plaintiff from the attack by Smith.

D.    Plaintiff's State Law Claims

Although defendants failed to mention plaintiff's state law claims in their motion for summary judgment, their counsel addressed the claims at oral argument, arguing that plaintiff's claims of negligence and vicarious liability fail for the same reasons as his Section 1983 claim.  I do not reach these arguments.

The court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The court's determination whether to exercise supplemental jurisdiction is guided by "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity that the Supreme Court outlined in <u>Carnegie-Mellon University v. Cohill</u>, 484 U.S. 343, 350-51 (1988), and <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966)." <u>Batiste v. Island Records, Inc.</u>, 179 F.3d 217, 227 (5th Cir. 1999); <u>accord Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.</u>, 554 F.3d 595, 602 (5th Cir. 2009), <u>petition for cert. filed</u>, 77 U.S.L.W. 3577 (Apr. 6, 2009) (No. 08-1233).

The statutory considerations are whether

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Although the Fifth Circuit's

"general rule" is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial, this rule is neither mandatory nor absolute. Thus, while

the district court's dismissal of the [plaintiff's] federal claims provides a powerful reason to choose not to continue to exercise jurisdiction, no single factor is dispositive in this analysis.

Batiste, 179 F.3d at 227 (quotations and citations omitted); accord Brookshire Bros., 554 F.3d at 602. The court must make its decision "in light of the specific circumstances of the case at bar." Id. (citation omitted). The Fifth Circuit's

> case law is clear that when a district court declines to exercise jurisdiction over remaining state law claims following the dismissal of all federal-law claims and remands a suit after investing a significant amount of judicial resources in the litigation analogous to that invested by the district court in this case [during more than 3 years of litigation, the court had decided 41 dispositive motions, 14 Daubert motions and 7 other motions in limine; discovery was closed; and the parties were making final preparations for their fourth trial setting], that court has abused its discretion under 28 U.S.C. § 1367.

Id.

In the instant case, plaintiff's federal claim against all defendants has been dismissed. The factors of judicial economy, convenience, fairness and comity weigh in favor of declining supplemental jurisdiction over his state law tort claims. First, as noted, no federal claims remain in the case. Second, comity favors dismissing the state law claims and letting the state court handle them (if plaintiff decides to pursue them) because of Louisiana's interest in adjudicating the claims of its citizens brought under its laws. Third, because the state law claims have not been addressed at all in this court and this court is not particularly familiar with them, judicial economy does not weigh in

favor of maintaining jurisdiction. Finally, fairness and convenience are equal whether the claim is brought in state or federal court.

"Unadjudicated pendant [sic] state law claims must be dismissed without prejudice to allow the plaintiff to refile in state court when a district court dismisses the federal claims serving as the basis for its jurisdiction and elects not to exercise supplemental jurisdiction over the state law claims." Brown v. Mississippi Valley State Univ., 311 F.3d 328, 334 n.6 (5th Cir. 2002); accord Johnson v. Texas Bd. of Crim. Justice, No. 07-20396, 2008 WL 5069357, at *2 (5th Cir. Dec. 2, 2008). Accordingly, plaintiff's negligence and respondeat superior claims will be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that defendants' motion for summary judgment is GRANTED, that plaintiff's federal claims are DISMISSED WITH PREJUDICE and that his state law claims are DISMISSED WITHOUT PREJUDICE, plaintiff to bear all costs of this proceeding. Judgment will be entered accordingly.

New Orleans, Louisiana, this ___2nd___ day of June, 2009.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE